UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 10-424-GWU

CATHERINE JEANINE RODRIGUEZ, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

1

> Impairments). If so, disability is conclusively presumed and benefits are awarded.
>
> 4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.
>
> 5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the

3

ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional

impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Catherine Jeanine Rodriguez, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of insulin dependent diabetes mellitus; chronic low back pain with degenerative disc disease of the lumbar spine, status post an L3-L4 fusion; chronic obstructive pulmonary disease with continued nicotine abuse; gastroesophageal reflux disease; obesity; and a major depressive disorder. (Tr. 16). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Rodriguez retained the residual functional capacity to perform a significant number of jobs existing in the

5

economy, and therefore was not entitled to benefits. (Tr. 21-24). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether the plaintiff, a 46-year-old woman with a post high school education and work experience as a cook and chef and as a restaurant manager, could perform any jobs if she were limited to lifting, carrying, pushing, and pulling up to 10 pounds occasionally and less than 10 pounds frequently along with standing or walking two hours each in an eight-hour day and sitting six hours in an eight-hour day, and also had the following non-exertional limitations. She: (1) could not climb ladders, ropes, or scaffolds; (2) could occasionally stoop, crouch, kneel, crawl, and ascend and descend stairs and ramps; (3) could not operate foot pedals or be exposed to vibration; (4) needed to avoid pulmonary irritants such as concentrated gases, dust, fumes, and smoke; and (5) required entry level work with simple procedures, no frequent changes in work routines, no requirement for detailed or complex problem solving, independent planning, or the setting of goals. (Tr. 934-35). The VE responded that there were jobs that such a person could perform and proceeded to give the numbers in which they existed in the state and national economies. (Id.).

On appeal, the plaintiff raises two issues. First, she argues that the hypothetical question was flawed because it did not include uncontradicted mental restrictions assessed by a reviewing psychologist. Second, she argues that the

ALJ's analysis of the plaintiff's credibility was inadequate.  The court finds both of these arguments to be meritorious, and a remand will be necessary for further consideration.[1]

The plaintiff alleged disability due to a back injury and possible diabetes.  (Tr. 57).  A large amount of medical evidence was submitted, but to summarize, it appears that the plaintiff underwent a complete laminectomy and fusion of the L3-L4 and L4-L5 levels of her lumbar spine in 2003.  (Tr. 157).  The procedure involved a bone graft and fixation by screws.  (Id.).  While she was released to return to work to her previous jobs (Tr. 166), her pain returned and a myelogram in July, 2004 showed that the fusion was incomplete at the L3-L4 level (Tr. 244).  Another fusion and bone graft followed.  (Tr. 239).  In July, 2005, her second surgeon, Dr. Karl Buechsenschuetz, opined that she could do sedentary level work with the ability to change position every 30 to 45 minutes and "rarely" bending, stooping, and twisting. (Tr. 560).  Although it later appeared that one of the surgical screws was loose, the physician felt that this was not causing back pain.  (Tr. 533).  A psychological consultation showed that she was extremely stressed by family issues in January, 2006 (Tr. 444), but at her last visit to Dr. Buechsenschuetz in March, 2006 he felt

---

[1] The plaintiff initially raised a third issue regarding an application for Disability Insurance Benefits, but abandoned the argument after the defendant supplemented the record with evidence showing that she was not insured.  <u>Response to the Commissioner's Motion for Summary Judgment</u>, Docket Entry No. 23, p. 1, fn. 1.

that she looked "100 percent better," and noted that she had finished physical therapy and was working out at a health club (Tr. 586).  He assigned a 23 percent impairment and suggested that she needed continued access to the health club and might need medication and chiropractic adjustments from time to time. (Id.).  He did not list any specific functional restrictions at this point.

The plaintiff moved from Montana to Kentucky at this point and was evaluated by additional physicians.  Dr. William Wheeler examined her, apparently for Worker's Compensation purposes, on March 22, 2007 (Tr. 608) and noted that she had constant pain which was worsened by long periods of sitting or standing, along with some leg numbness (Tr. 609).  His examination showed a slow and unsteady gait, paraspinal muscle spasms, and a very limited range of motion.  (Tr. 609-10).  He also reviewed extensive medical records. (Tr. 611-12).  He diagnosed a "failed back syndrome with multiple back surgeries" and assigned a 45 percent impairment. (Tr. 612).  Dr. Henry Tutt, by contrast, conducted an evaluation on April 2, 2007 which showed very few physical abnormalities and reviewed a recent MRI showing some degenerative changes but no compression or disc herniation.  (Tr. 623).  He opined that the nature of her pain would not fit with mild degenerative changes, and advised her to pursue weight reduction and a fitness program.  (Tr. 623-4).  Office notes from the Veteran's Administration Medical Center (VAMC) reflect treatment for a wide variety of problems including diabetes, obstructive sleep

apnea, high blood pressure, and depression. No functional restrictions are provided. (Tr. 637-824).

Dr. Mark Delomas treated the plaintiff beginning in September, 2007 and found severe bilateral facet and sacroiliac joint tenderness with range of motion decreased in all planes with pain. (Tr. 866-67). He attempted to perform injections to block the plaintiff's pain, but these provided little relief. (Tr. 857, 859). Therefore, he decided to place an intrathecal pump to dispense the narcotic pain medication Dilaudid directly into her spine. (Tr. 853, 900, 906). This caused a cerebral spinal fluid leak which required an epidural blood patch. (Tr. 867). No functional restrictions are given.

Psychologically, in addition to the previously-mentioned psychological evaluation discussing the plaintiff's stressful home life (Tr. 444), Mrs. Rodriguez complained of depression, irritability, and concentration problems to a source at the VAMC in August, 2007. She was diagnosed with recurrent major depressive disorder and her anti-depressant medication was adjusted, resulting in some improvement in her condition on a subsequent visit. (Tr. 657-58, 683). Once again, no specific functional restrictions are provided.

The only mental health source to list specific functional restrictions was Psychologist H. Thompson Prout, who completed a mental residual functional capacity assessment form after reviewing the evidence in December, 2007 on

behalf of the state agency.  In Part I of the form, designated "Summary Conclusions," he indicated that Mrs. Rodriguez would have a moderately limited ability to carry out detailed instructions and maintain attention and concentration for extended periods.  (Tr. 839-40).  In Part III of his report, designated "Functional Capacity Assessment," he noted that the plaintiff's alleged limitations in concentration and social functioning appeared to be partially credible, and that she appeared able to understand, remember, and sustain attention with simple, even-paced tasks for extended periods of two-hour segments, relate adequately in routine settings, and adapt to routine task demands.  (Tr. 841).

In the hearing decision, the ALJ did not specifically mention Dr. Prout or his report or indicate how he reached his conclusions regarding the plaintiff's mental restrictions.  The Commissioner's regulations at 20 C.F.R. § 416.927(f)(2) provide that, while administrative law judges are not bound by findings made by state agency consultants, these sources are "highly qualified . . . psychologists who are also experts in Social Security disability evaluation" and their findings must be considered by the ALJ.  Moreover, "unless the treating source's opinion is given controlling weight the administrative law judge must explain in the decision the weight given to the opinions of a state agency . . . psychological consultant . . ., as the [ALJ] must do for any opinions from treating sources, non-treating sources, and other non-examining sources . . . ."

The plaintiff notes that the hypothetical question is not consistent with Dr. Prout's findings, in that it did not mention the moderate limitations on attention and concentration in Part I or the limitation to sustaining attention for periods of two-hour segments mentioned in Part III.  (Tr. 839, 841).  As the plaintiff notes, the situation is similar to Ealy v. Commissioner of Social Security, 594 F.3d 504, 516-17 (6th Cir. 2010), in which the Sixth Circuit ruled that the omission of a limitation to concentration to two-hour segments was a fatal flaw in the hypothetical question.  While the Commissioner attempts to distinguish Ealy because the ALJ did not say in the present case that he was specifically relying on Dr. Prout, there is no other source that provided limitations, and the Commissioner's regulations would not allow Dr. Prout's opinion to be completely ignored by the ALJ in any case.  Therefore, a remand will be required for additional findings on this point.

Regarding the plaintiff's second issue, credibility, the ALJ did find that the plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent that they were inconsistent with his residual functional capacity assessment.  (Tr. 22).  See Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).  However, there is no real explanation of the reasons for this finding.  The Commissioner's regulations provide that:

> The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.  This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

Social Security Ruling 96-7p.  The paragraphs following the ALJ's credibility finding, which are presumably intended to support it, rely mainly on the March, 2006 office note from Dr. Buechsenschuetz which indicated substantial improvement at that time, and the fact that she could drive a car.  (Tr. 22).  There is nothing about her subsequent treatment or the placement of the pain pump.  Therefore, the plaintiff is correct that the assessment is not sufficiently specific to make clear to a subsequent reviewer the weight given to the plaintiff's statements and the reasons for the weight.  This issue can also be addressed on remand.

The decision will be remanded for further consideration of the factors set out in this opinion.

This the 13th day of December, 2011.

**Signed By:**

*G. Wix Unthank*

**United States Senior Judge**